UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ADAM LEE CLARK, | ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 4:20-cv-01142-SEP |
| MICHAEL G. THOMPSON, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

Before the Court is Defendant Michael G. Thompson's Renewed Motion for Summary Judgment. Doc. [65]. For the reasons set forth below, the motion is granted.

### FACTS AND BACKGROUND[1]

At all times relevant to this motion, Plaintiff Adam Clark was an inmate held by the Missouri Department of Corrections. Doc. [67] ¶ 1. In November 2019, Plaintiff was transferred to the Farmington Correctional Center (FCC) in Farmington, Missouri, to participate in a drug-treatment program. *Id.* ¶ 3. He was expected to complete that program and be released from custody on June 2, 2020. *Id.* ¶ 4. Plaintiff uses a cane because his right foot is partially amputated. Doc. [68] ¶ 33. Defendant Michael G. Thompson began working as a corrections officer at FCC in December 2019. Doc. [67] ¶ 5. Plaintiff and Defendant did not meet before the incident that led to this suit. *Id.* ¶ 16.

On December 30, 2019, the parties got into a dispute about a pair of contraband eyeglasses Defendant found while searching Plaintiff's bunk. *Id.* ¶¶ 17-23. When Defendant questioned Plaintiff about burn marks on the glasses, Plaintiff was "put off" and "angry," so he responded with profanity and "attitude in [his] voice." *Id.* ¶¶ 19-23. Defendant attempted to take Plaintiff's cane and put him in handcuffs to take him to administrative segregation, but Plaintiff resisted by pulling his arm away and asking, "What the f*** is your problem man?" *Id.* ¶¶ 25-26. Defendant ordered Plaintiff to stop resisting, and Plaintiff responded "Quit resisting? I don't even know what your problem is." *Id.* ¶¶ 27-28. Defendant was then able to secure Plaintiff's arms behind his back, take his cane, and handcuff him. *Id.* ¶¶ 27-29. On the walk to

---

[1] The facts are drawn from Defendant's Statement of Uncontroverted Material Facts, Doc. [67], and Plaintiff's Response to Statement of Material Facts, Doc. [68].

administrative segregation, Plaintiff began arching his back and leaning back toward Defendant. *Id.* ¶ 33. Plaintiff denies that arching his back and leaning back was "intentional resistance," but he does not deny that it continued over the course of the escort; nor does he deny that Defendant interpreted the behavior as resisting and repeatedly told him to stop. Doc. [67] ¶¶ 33-34, 37, 38; Doc. [68] ¶¶ 33, 37, 38; Doc. [69] at 8 ("Defendant interpreted Plaintiff being unable to walk as quickly as himself and 'pushing back' as a result to be resistance to the escort."). He also does not deny that he shouted to other inmates as they walked: "This guy is accusing me of doing heroin. Man, I've never done heroin in my life." Doc. [67] ¶ 35.

Because of the apparent resistance and shouting, Defendant "took [Plaintiff] to the wall and ordered him to quit pushing back." *Id.* ¶ 36. When they continued, Plaintiff continued to arch his back and push back against Defendant. *Id.* ¶ 37; Doc. [68] ¶ 37. Eventually, Defendant took Plaintiff to the ground. Doc. [67] ¶ 39. The parties dispute whether Plaintiff turned around or Defendant spun him around, but Plaintiff does not dispute that Defendant "had to stop the escort due to the continued arching." Doc. [68] ¶ 39. Once on the ground, Plaintiff did not comply with Defendant's orders to lay on his stomach and continued to resist Defendant. Doc. [67] ¶¶ 41, 43. To compel Plaintiff's compliance, Defendant delivered knee strikes to Plaintiff's abdomen. *Id.* ¶ 41. Plaintiff alleges that Defendant also kneed Plaintiff in the head and upper body. Doc. [68] ¶ 41. Eventually Plaintiff was escorted by a different corrections officer to administrative segregation, where he was seen by a nurse about 15 minutes after the use of force. Doc. [67] ¶¶ 45-48. His initial examination and a follow-up later that day revealed abrasions behind Plaintiff's ears and on his mid back. *Id.* ¶¶ 48-51. A little over a week later, Plaintiff began complaining of ringing in his right ear. *Id.* ¶ 55. Plaintiff was convicted of a violation of Rule 19.1—"Creating a Disturbance"—for the incident and was referred to the Program Review Committee, which terminated him from the program "due to a lack of therapeutic gain," resulting in a "six month setback that moved his release date to January 22, 2021." *Id.* ¶¶ 66-68.

Plaintiff now brings a 42 U.S.C. § 1983 claim against Defendant in his individual capacity for violating Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment.[2]

---

[2] On a 28 U.S.C. § 1915(e)(2) review, the Court dismissed: (1) claims against Defendant Thompson in his official capacity; (2) claims against Warden Teri Lawson in her individual and official capacities; and (3) claims against the Farmington Correctional Center. *See* Docs. [8], [9].

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (alteration in original) (quoting *Wingate v. Gage Cnty. Sch. Dist.*, 528 F.3d 1074, 1079 (8th Cir. 2008)). "A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot product admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2).

Motions for summary judgment that assert qualified immunity are "unique in that 'the court should not deny summary judgment any time a material issue of fact remains on the constitutional violation claim.'" *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012) (cleaned up) (quoting *Brockinton v. City of Sherwood*, 503 F.3d 667, 671 (8th Cir. 2007)). "Because qualified immunity 'is an *immunity from suit* rather than a mere defense to liability[,] . . . it is effectively lost if a case is erroneously permitted to go to trial." *Id.*

(alteration in original) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)).   Therefore, in a qualified immunity case, "the court must take a careful look at the record, determine which facts are genuinely disputed, and then view those facts in a light most favorable to the non-moving party so long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe[them].'"  *O'Neil v. City of Iowa City*, 496 F.3d 915, 917 (8th Cir. 2007) (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## DISCUSSION

Defendant makes three arguments in support of his motion for summary judgment: (1)  Plaintiff's claim is barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) Defendant did not violate Plaintiff's Eighth Amendment right; and (3) Defendant is entitled to qualified immunity.  The Court does not believe that this lawsuit is barred by *Heck v. Humphrey*, but it agrees that Defendant is entitled to qualified immunity.

**I.     Plaintiff's claim is not barred by *Heck v. Humphrey*.**

In *Heck v. Humphrey*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486–87 (footnote omitted).  *Heck*'s bar also applies to § 1983 challenges to prison disciplinary convictions that affect the length of confinement.  *See Edwards v. Balisok*, 520 U.S. 641 (1997).  A district court faced with a prisoner's § 1983 claim "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  *Heck*, 512 U.S. at 487.

Defendant argues that Plaintiff's claims are *Heck*-barred because "[t]he facts underlying the claim in this action are the same as those underlying the disciplinary action that increased the amount of time Clark had to serve on his original sentence." Doc. [66] at 3-4.  Plaintiff admits that the facts are the same but argues that *Heck* does not bar his claim because "[t]he issue in this case is not whether the discipline Plaintiff received was improper, but whether the force used by Defendant was unconstitutionally *excessive*." Doc. [69] at 6 (emphasis added).

4

The Eighth Circuit has explained that a "finding that [a law enforcement officer] used excessive force would not necessarily imply the invalidity of [a prisoner's] convictions." *Colbert v. City of Monticello*, 775 F.3d 1006, 1008 (8th Cir. 2014).  When applying *Heck* to excessive force claims, the Eighth Circuit has twice cited *Huey v. Stine*'s principle that "Eighth Amendment claims do not run afoul of *Heck* because the question of the degree of force used by a police or corrections officer is analytically distinct from the question whether the plaintiff violated the law."  230 F.3d 226, 230 (6th Cir. 2000) (cited by *Colbert*, 775 F.3d at 1008; *Henson v. Brownlee*, 2 F. App'x 635, 637 (8th Cir. 2001)).  That principle applies here.

Plaintiff was disciplined for creating a disturbance, and Plaintiff claims that Defendant used excessive force in response to that disturbance.  "[V]iewing the evidence in the light most favorable to [Plaintiff] and affording [him] all reasonable inferences," both can be true.  *Grinnell Mut. Reinsurance Co. v. Dingmann Bros. Constr. of Richmond, Inc.*, 34 F.4th 649, 652 (8th Cir. 2022).  In the Complaint, Plaintiff alleges that Defendant "assaulted [him] while cuffed behind [his] back" and "knee[d] [him] in the head several times then in [his]chest/upper body."  Doc. [1] at 3.  Defendant maintains that force was necessary in response to Plaintiff's arching his back and leaning back toward Defendant during the escort.  Plaintiff does not deny that he arched his back and leaned back, but he denies that his conduct justified Defendant's use of force.  According to Plaintiff, "Defendant interpreted Plaintiff being unable to walk as quickly as himself and 'pushing back' as a result to be resistance to escort.  Plaintiff was already restrained and there was no need for Defendant to throw him to the ground and strike him multiple times to coerce cooperation."[3]  Doc. [69] at 8 (citations omitted).  "It is logically possible both" that (1) Plaintiff's undisputed conduct constituted the creation of a disturbance, and (2) Defendant's use of force was excessive.  *Dixon v. Hodges*, 887 F.3d 1235, 1240 (11th Cir. 2018).  "Because

---

[3] Plaintiff's admission of the conduct underlying the disciplinary violation—e.g., agitation, profanity, pulling his arm away—and that Defendant interpreted the arching of his back and leaning back as resistance are important to the Court's analysis.  *See* Doc. [23-1] at 4; Doc. [68] (admitting ¶¶ 17-30, 34-36, 42, 43 of Defendant's Statement of Undisputed Material Facts, Doc. [67], and contesting ¶¶ 33, 37, 38 only as to whether the conduct described was "intentional resistance").  Those admissions allow Plaintiff to argue that Defendant's use of force was excessive without denying the basis for his disciplinary violation.  If Plaintiff denied that he created a disturbance at all, *Heck* might apply.  *See Aucoin v. Cupil*, 958 F.3d 379, 383 (5th Cir. 2020) ("[W]hen a plaintiff's claim 'is based solely on his assertions that he did nothing wrong, and was attacked by the officers for no reason,' that suit 'squarely challenges the factual determination that underlies his conviction' and is necessarily at odds with the conviction." (cleaned up) (quoting *Walker v. Munsell*, 281 F. App'x 388, 390 (5th Cir. 2008) (per curiam))).  But Plaintiff does not deny that finding, or the grounds for it, in this lawsuit.  *See generally* Doc. [1].

'there is a version of the facts which would allow the [punishment] to stand' alongside a successful § 1983 suit, *Heck* does not control." *Id.* (quoting *Dyer v. Lee*, 488 F.3d 876, 883 (11th Cir. 2007)). A judgment for Plaintiff would not necessarily imply the invalidity of his Rule 19.1 violation and extended sentence; therefore, the claim is not barred by *Heck*.

## II.     Defendant is entitled to qualified immunity.

Defendant argues that he is entitled to qualified immunity from Plaintiff's Eighth Amendment excessive force claim. "The qualified immunity inquiry involves two questions: '(1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation.'" *McDaniel v. Neal*, 44 F.4th 1085, 1089 (8th Cir. 2022) (quoting *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012)). "The defendant is entitled to qualified immunity unless the answer to both of these questions is yes," and "[t]he court may consider them in either order." *Id.* at 1089 (citing *Pearson v. Callahan*, 555 U.S. 223, 236, (2009)).

"Qualified immunity is an affirmative defense for which the defendant carries the burden of proof," but the plaintiff "must demonstrate that the law is clearly established." *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002) (citing *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989)). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). The plaintiff does not need to supply a case directly on point to demonstrate that a right is clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 8 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)). "'[C]learly established law' should not be defined 'at a high level of generality.'" *White*, 580 U.S. at 79 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Rather, "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established[]' . . . 'in light of the specific context of the case.'" *Mullenix*, 577 U.S. at 12 (first quoting *Ashcroft*, 563 U.S. at 742; then quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam))). Thus, to satisfy the second prong of the qualified immunity analysis, Plaintiff must point to existing precedent that places it beyond debate that the Defendant's particular conduct—construed in the light most favorable to Plaintiff—violated clearly established law in the specific context of this case.

6

Plaintiff has not satisfied the second prong of the qualified immunity analysis—showing that Defendant's conduct violated clearly established law. Plaintiff correctly points out that "excessive force in violation of the Eighth Amendment" is a "violation of a clearly established right." Doc. [69] at 10. But his analysis stops at that "high level of generality." *Ashcroft*, 563 U.S. at 742. The general proposition that the use of excessive force violates the Eighth Amendment would not have provided notice to Officer Thompson, or "every reasonable official" in his position, that his alleged conduct in this case violated the law. *Rivas-Villegas*, 595 U.S. at 5. The cases Plaintiff cites would have provided no such notice, either.

In *Hudson v. McMillian*, corrections officers took the plaintiff out of his cell and, while he was still handcuffed and shackled, "punched [the plaintiff] in the mouth, eyes, chest, and stomach while [another officer] held the inmate in place and kicked and punched him from behind," and a supervising officer observed and told the officers 'not to have too much fun.'" 503 U.S. 1, 4 (1992). Under those circumstances, a magistrate judge found after a trial that the officers "used force when there was no need to do so." *Id*. *Hudson* does not clearly establish that Defendant's conduct was unlawful, even assuming all factual disputes in Plaintiff's favor and giving Plaintiff the benefit of all reasonable inferences. Hudson was in "full restraints, handcuffs and shackles," *Hudson v. McMillian*, 962 F.2d 522, 522 (5th Cir. 1992); there was no suggestion that he made any verbal objection or manifested any physical resistance to his escort; and he was assaulted by two officers while a third looked on approvingly. Here, the uncontroverted facts show that Defendant alone was escorting an agitated, shouting prisoner who kept arching his back and leaning back despite repeated orders to stop resisting, and who continued resisting even after being taken to the ground. Doc. [67] ¶¶ 19-44. Even assuming Plaintiff's physical resistance to Defendant's escort was not "intentional resistance" and Defendant delivered knee strikes not just to Plaintiff's abdomen but to the right side of his head and his upper body, *see* Doc. [68] ¶¶ 33, 41, *Hudson* would not have provided notice to Defendant that such strikes would be illegal in the context of this case.

In *Wilkins v. Gaddy*, the plaintiff had alleged that the corrections officer, "apparently angered by [the plaintiff's] request for a grievance form, snatched [the plaintiff] off the ground and slammed him onto the concrete floor. [The officer] then proceeded to punch, kick, knee and choke [the plaintiff] until another officer had to physically remove him from [the plaintiff]." 559 U.S. 34, 35 (2010) (cleaned up). The Supreme Court reversed the lower court's finding that the

7

injury was *de minimis* as a matter of law without considering whether the force was applied "maliciously and sadistically to cause harm." *Id.* at 39 (quoting *Hudson*, 503 U.S. at 7). Notably, the Supreme Court "express[ed] no view on the underlying merits of his excessive force claim." *Id.* at 40. Thus, it is hard to see how the Supreme Court's decision in *Wilkins* could have "clearly established" that any course of conduct constituted excessive force. Even assuming that it could be cited as such an authority, though, the facts of *Wilkins* are not similar to the facts of this case. The officer in *Wilkins* allegedly used force against an inmate in his cell in retaliation for the plaintiff requesting a grievance form. Here, it is undisputed that Plaintiff was agitated, used profanity, shouted at other inmates, and repeatedly arched his back and leaned back during an escort, despite being ordered to stop. Defendant also used a lower level of force than was alleged in *Wilkins*. Construing the facts most favorably to Plaintiff, he struck Plaintiff's body and head in response to Plaintiff's resistance after being taken to the ground. Doc. [67] ¶¶ 39-44. He did not "punch, kick, knee, and choke" Plaintiff until another guard removed him. *Wilkins*, 559 U.S. at 35.

Plaintiff's remaining cases provide even less insight into the legality of Defendant's conduct under the circumstances of this case. In *Whitley v. Albers*, the plaintiff was shot by a corrections officer responding to a hostage situation in the plaintiff's cell block. 475 U.S. 312, 316 (1986). The Supreme Court held that the shooting did not violate the plaintiff's Eighth Amendment right because it was part of a good faith effort to restore prison security. *Id.* at 320. Whether an officer can use lethal force to gain control over a hostage situation is not relevant to the legality of Defendant's conduct here. And Plaintiff's last two cases are entirely inapposite. *See Graham v. Connor*, 490 U.S. 386, 399 (1989) (holding that an excessive force claim in the context of an investigatory traffic stop should be analyzed under the Fourth Amendment); *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (considering a deliberate indifference claim).

Plaintiff has thus failed to carry the burden of showing that Defendant's conduct violated clearly established law. *See Sparr*, 306 F.3d at 593. On its own review of the case law,[4] the Court has also found no Supreme Court or circuit precedent placing it beyond debate that the Defendant's particular conduct—construed in the light most favorable to Plaintiff—violated clearly established law in the specific context of this case.

---

[4] The Supreme Court has instructed that qualified immunity analysis is "to be conducted in light of all relevant precedents." *Elder v. Holloway*, 510 U.S. 510, 516 (1994).

8

Eighth Circuit precedent generally allows corrections officers flexibility when maintaining prison discipline. *See, e.g.*, *Smith v. Conway Cnty.*, 759 F.3d 853, 858 (8th Cir. 2014) ("Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in light of the particular circumstances." (quoting *Story v. Norwood*, 659 F.3d 680, 686 (8th Cir. 2011)); *Johnson v. Hamilton*, 452 F.3d 967, 972 (8th Cir. 2006) ("Officers are permitted to use force reasonably in a good-faith effort to maintain or restore discipline, as long as they do not use force maliciously and sadistically to cause harm."). *Stenzel v. Ellis* is instructive. 916 F.2d 423 (8th Cir. 1990). There, a prisoner refused to comply with a corrections officer's order to adjust his blankets to "show some skin."[5] *Id.* at 425. After the prisoner ignored three orders, three officers entered the cell to forcibly remove him from the room. *Id.* The officers pulled his hair and shoved him to the floor. *Id*. One officer put a knee in the prisoner's back and another pulled back a finger on the prisoner's hand. *Id.* To maintain control of the prisoner on the way to the isolation unit, one officer "choked [the prisoner] to the point that he could not speak." *Id*. The prisoner denied resisting on the way to isolation but admitted "it would be fair to say that [he] resisted pain." *Id*. In *Stenzel*, as here, the plaintiff alleged that corrections officers used excessive force while escorting him to a segregated housing unit for a rule violation. Both plaintiffs were warned to comply with an officer's commands several times before force was used. Both plaintiffs claimed that any perceived resistance was an involuntary response to pain. And the level of force used by the officers in *Stenzel* was at least equivalent to the force that Plaintiff alleges Defendant used. The Eighth Circuit held that the "jailers' perception of the potential security risk was reasonable" and the conduct did "not rise to the level of a constitutional violation." *Id*. at 427. That holding weighs heavily against finding that Defendant's conduct in this case violated clearly established law.

The facts of *Rogers v. Brouk* are also similar to the facts of this case. 731 F. App'x 564 (8th Cir. 2018) (per curiam) (unpublished). After searching the plaintiff's cell, two corrections officers found contraband. *Rogers v. Brouk*, 2017 WL 3333929, at *2 (E.D. Mo. Aug. 4, 2017), *aff'd*, 731 F. App'x at 564. They ordered the plaintiff to submit to a strip search and, after first

---

[5] "The rule requiring prisoners to 'show skin' while sleeping was put into effect to [e]nsure that prisoners were actually in their bunks during head counts. The . . . jail had relatively recent experience with escapes where prisoners used their bed clothes to make it appear people were in the bunks." *Stenzel*, 916 F.2d at 426-27.

9

complying, he jerked away.  *Id.*  Defendants then tackled plaintiff to the ground and kicked him in the head three or four times.  *Id*.  The district court found that the plaintiff's "actions were disruptive to the security of the institution and defendants acted to restore discipline," and that the "defendants acted reasonably and did not act 'maliciously and sadistically to cause harm.'" *Id.* at *3.  The district court therefore granted them summary judgment and qualified immunity, *id*., which the Eighth Circuit affirmed.  That holding also militates against a finding that "every reasonable official would have understood that" Defendant's conduct here was illegal.  *Rivas-Villegas*, 595 U.S. at 5.

The Court cannot rule out the possibility that Defendant could have controlled Plaintiff with less force—e.g., with fewer knee strikes or with a different tactic altogether.  But qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force.' "  *Brosseau*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).  The state of Eighth Amendment excessive force law in December 2019 would not have "provided fair warning to [Thompson] that [his] alleged conduct was unconstitutional."  *Ellison v. Lesher*, 796 F.3d 910, 914 (8th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).  Therefore, he is entitled to qualified immunity.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Michael G. Thompson's Motion for Summary Judgment, Doc. [65], is GRANTED.

A separate judgment accompanies this Memorandum and Order.

Dated this 29th day of September, 2023.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE